UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RITHA JO ISON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-054-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Ritha Ison appeals the Acting Commissioner of Social Security's denial of her claim for disability insurance benefits and supplemental security income.  [Record No. 1] Ison contends *inter alia* that her redetermination process was improper and that Administrative Law Judge ("ALJ") Sandra R. DiMaggio Wallis failed to adequately support her finding that Ison had the capacity to perform light work from January 1, 2006 through October 1, 2009.

Upon review of the record and the parties' arguments, the Court finds that redetermination was proper and the ALJ's decision is based upon substantial evidence and correctly-applied rules of law.  As a result, the Acting Commissioner's decision will be affirmed.

## I.  Background

Ison was 48 years old and living with her daughter and grandchild during the first year of her alleged disability.  [Record No. 8, p. 167-68] She has a twelfth-grade education and until 2005, had worked in various positions including as a machine operator, nurse technician, house

cleaner, and cashier.[1]  [*Id.* at 319, 904-05] Her disability allegedly began on January 1, 2006, and consists of various ailments, including a spinal disorder, carpal tunnel syndrome, and obesity. [*Id.* at 902-09]

Ison filed applications for supplemental security income and disability insurance benefits on July 28, 2008.  [*Id.* at 166-175] The United States Social Security Administration ("SSA") denied her claims initially and on reconsideration.  [*Id.* at 466] Ison requested a hearing in 2009, which was held before ALJ David Daugherty, who determined that Ison was disabled beginning on January 1, 2006.  Ison was represented at that time by then-attorney Eric Conn, and her disability determination was based on a report by Frederick Huffnagle, M.D. [*Id.* at 216]

Conn perpetrated a large-scale social security fraud scheme, assisted by ALJ Daugherty and four medical professionals—including Dr. Huffnagle—during the period of Ison's representation.  [*Id.* at 912-35] Specifically, Conn "secured benefits for his clients by submitting fraudulent reports to the [SSA]," and ALJ Daugherty accepted "bribes . . . to assign Conn's cases to himself and issue favorable rulings."  *Hicks v. Commissioner of Social Security*, 909 F.3d 786, 791-92 (6th Cir. 2018).

Social security employees began reporting to their superiors in 2006 regarding irregularities in ALJ Daugherty's cases.  [Record No. 8, p. 912] One employee anonymously called the SSA's Office of Inspector General ("OIG") to report the "misappropriation of cases" in 2009 and submitted a fraud complaint and letter to the OIG in 2011.  [*Id.* at 915-16] The OIG and the United States Senate Committee on Homeland Security and Governmental Affairs

---

[1]      Ison also earned $2.45 from "Nestle V Department of Labor" in 2009.  [*Id.* at 905]

("The Committee") began an investigation in 2011. *Hicks*, 909 F.3d at 793. "The Committee issued a report in October 2013 finding that 'Judge Daugherty worked with Mr. Conn in inappropriate ways to approve a high volume of cases submitted by the Conn Law Firm.'" *Id.* (quoting Senate Committee on Homeland Security and Governmental Affairs, *How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm* 5 (Oct. 7, 2013), available at https://www.hsgac.senate.gov/imo/media/doc/REPORT%20Conn%20case%20history%20report-final%20%20(10-7-13).pdf.).

The SSA Appeals Council wrote to Ison on May 18, 2015, indicating that there was reason to believe that fraud was involved in her application process. [Record No. 8, p. 107] The letter informed Ison that a redetermination proceeding was necessary pursuant to sections 205(u) and 1631(e)(7) of the Social Security Act. Thereafter, ALJ Joseph R. Doyle issued an unfavorable decision on April 20, 2016. [Record No. 8, pp. 516-30] The Appeals Council denied her request for review, and Ison filed suit in federal court. [*Id.* at 1-3, 544-50]

A group of plaintiffs—previous clients of Conn in a nearly identical situation as Ison— challenged the legality of the SSA's redetermination process before the United States Court of Appeals for the Sixth Circuit. [*Id.* at 556] This Court stayed Ison's case pending the Sixth Circuit's decision, which ruled in favor of the plaintiffs in *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018). [Record No. 8, pp. 554-56] The matter was subsequently remanded to the SSA for further proceedings consistent with *Hicks*. [*Id.* at 560]

Following remand, the Appeals Council notified Ison on August 26, 2020, that it was further remanding her case for another redetermination hearing. [*Id.* at 563] The coronavirus pandemic and Ison's objections to virtual or telephonic hearings delayed proceedings. [*Id.* at

576, 723, 743] Ison's redetermination hearing was eventually held in person on September 16, 2022.  [*Id.* at 489-515]

ALJ Wallis issued a new redetermination decision on November 2, 2022, excluding Dr. Huffnagle's report from consideration because there was reason to believe that fraud was involved.  [*Id.* at 466-81] After considering the entire record, ALJ Wallis determined that the following conditions were severe: "lumbar spine degenerative disc disease, carpal tunnel, and obesity."  [*Id.* at 472] The ALJ concluded that Ison could not perform her past work but had the capacity to conduct certain light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). [*Id.* at 475, 479] Based on the vocational expert's testimony, there were jobs existing in significant numbers in the national economy that Ison could perform, including retail merchandise marker, mail clerk, and dispatcher/routing clerk.  [*Id.* at 480-81] Accordingly, the ALJ concluded that Ison was not disabled under the Social Security Act.

## II.  Standard of Review

"The District Court's function . . . is limited, except as to errors of law, to determining whether there is substantial evidence in the record[.]"  *Walters v. Gardner*, 397 F.2d 89, 90 (6th Cir. 1968); *see also Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013) (stating that review is limited to determining whether "[t]he ALJ . . . applied the governing law correctly to reach a conclusion supported by substantial evidence").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U. S. 197, 229 (1938); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).   "[T]he threshold for such evidentiary sufficiency is not high," but it is "more than a mere scintilla.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).  Additionally, "even if supported by

substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r SSA*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. Discussion

### A. The Redetermination Process

Ison attacks the SSA's redetermination process in four ways, arguing that the defendant: (1) failed to "immediately redetermine" Ison's entitlement to benefits; (2) violated Ison's procedural due process rights; (3) applied an improper standard to exclude Dr. Huffnagle's report; and (4) incorrectly found that there was "reason to believe" fraud was involved in this case. [Record No. 9, pp. 3-5, 13-15]

### i. The Failure to Immediately Redetermine Ison's Entitlement to Benefits and Alleged Violations of Procedural Due Process

The Commissioner of Social Security is generally required to "immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits[.]" 42 U.S.C. § 405(u)(1)(A); *see also* 42 U.S.C. § 1383(e)(7). The statute, however, does not provide for a consequence for failure to "immediately" redetermine a plaintiff's entitlement. *See id.* Ison asserts that the defendant "violated the immediacy requirement," because it "had reason to believe that there was fraud in the Eric Conn cases in 2006," and "certainly by 2013[.]" [Record No. 9, p. 3 (quoting *Hicks*, 909 F.3d at 811).]

Ison's circumstances mirror the plaintiffs' circumstances in *Hicks*, who proffered the same argument before the Sixth Circuit. There, the plaintiffs applied for "benefits between

June 2006 and October 2008, and their applications were initially denied." *Hicks*, 909 F.3d at 792. "The SSA sent letters on May 18, 2015 to . . . the eleven plaintiffs," and "approximately 1,500 other individuals," indicating that redetermination was required. *Id.* at 794. The *Hicks* panel determined that the "SSA had 'reason to believe' [the] plaintiffs' application involved fraud as far back as 2006 . . . and certainly by 2013," but "[n]evertheless, the SSA prevails on this claim." *Id.* at 811.

The Supreme Court of the United States has "reiterated its position that 'if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.'" *Id.* at 812 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). An exception to the general rule occurs when "individuals are 'injuriously affected' by the procedural violation." *Id.* at 812 (quoting *French v. Edwards*, 80 U.S. 13 (1871)). The *Hicks* panel found that the SSA's delay "made it harder for plaintiffs to supplement their administrative records with additional relevant materials and enabled Conn to destroy records," but courts must "consider 'the general purpose' of statutes before imposing sanctions that 'would undermine the very governmental interests that [the statute] is meant to protect.'"

"'[T]he general purpose' of § 405(u) was to enable the SSA to end fraudulent determinations more quickly than the reopening procedures at that time allowed." *Hicks*, 909 F.3d at 813. "It thus seems counterintuitive to hold that a failure to reverse fraudulent determinations quickly enough precludes the government from reversing those determinations at all." *Id.* Here, Ison filed her initial application and received her redetermination letter during the same period as the plaintiffs in *Hicks*. The Sixth Circuit, therefore, has already determined that the government may reverse Ison's status, despite a failure to "immediately" redetermine

her entitlement to benefits. Ison's contention that "the [Sixth Circuit] commented that 'remedial tools are likely available' for the prejudice caused by the Social Security Administration's delays," does not change this Court's conclusion.

Ison's procedural due process argument is also based on the SSA's delay and Ison's insufficient "memory to testify regarding her consultation with Dr. Frederic Huffnagle." [Record No. 9, p. 4] But Ison fails to acknowledge that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961); *see also Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In this case, Ison was afforded a new redetermination hearing with an opportunity to rebut the SSA's assertions in accordance with *Hicks*. As noted, the coronavirus pandemic and Ison's objections to virtual or telephonic hearings delayed proceedings. The plaintiff's redetermination hearing was reasonably conducted under the circumstances.

### ii. The "Reason to Believe" Standard and Substantial Evidence

The Social Security Act provides that, "[w]hen redetermining the entitlement, or making an initial determination of entitlement, . . . the Commissioner of Social Security shall disregard any evidence if there is *reason to believe* that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B) (emphasis added). Ison argues that the defendant improperly applied the "reason to believe" standard to exclude Dr. Huffnagle's report, because "the preponderance of the evidence standard is 'the default standard in civil and administrative proceedings.'" [Record No. 9, p. 13 (quoting *Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996)] But "[i]f the statutory language is unambiguous, 'the judicial inquiry

is at an end, and the plain meaning of the text must be enforced.'" *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 463 (6th Cir. 2010) (quoting *United States v. Plavcak*, 411 F.3d 655, 661 (6th Cir. 2005)). "On its face, then, § 405(u) requires the SSA to redetermine benefits based on something less than proof of fraud." *Hicks*, 909 F.3d at 809.[2] The ALJ applied the proper standard according to the plain text of the statute.

Ison alternatively contends that the ALJ's fraud finding is not supported by substantial evidence. [Record No. 9, pp. 13-15] She correctly points out in her reply that *Jaxson v. Saul* is a "Seventh Circuit case [and] is not binding," but it is persuasive:

> [The applicant] needs a powerful argument, for under the statute any "reason to believe" that the report is fraudulent requires its exclusion. The ALJ need not find that fraud is more likely than not. If an applicant is disabled, it should be possible to provide other evidence to that effect; excluding one potentially tainted report need not be dispositive, and erring on the side of exclusion, as the statute requires, seems a prudent precaution.
>
> [The applicant] may have a hard time persuading an ALJ that there is not even "reason to believe" that Huffnagle's report is fraudulent. But he is entitled to try,

970 F.3d 775, 778 (7th Cir. 2020). The reason-to-believe standard is a "very low bar," lacking a requirement that "the Commissioner . . . provide evidence specifically tying the fraud to their individual applications." *Hicks*, 909 F.3d at 820 (Rogers, J., dissenting).

Here, ALJ Wallis excluded Dr. Huffnagle's report because, *inter alia,* Conn admitted to fabricating medical reports and paying ALJ Daugherty and four physicians for their signature, including Dr. Huffnagle. Ison was represented by Conn during the relevant period, and ALJ Daugherty awarded Ison benefits, "relying entirely on Dr. Huffnagle's report."

---

[2]    Ison also acknowledges that "*Hicks* . . . indicate[s] that the evidentiary standard for reason to believe does not require preponderance of the evidence." [Record No. 9, p. 13]

[Record No. 8, pp. 76, 468] The ALJ further explained that there was reason to believe fraud was involved, "[g]iven the similarities between Mr. Conn's admitted fraud scheme and the facts of this case," and "[t]herefore, this evidence has not been considered." [*Id.* at 468] And her decision to exclude Dr. Huffnagle's report was supported by an OIG agent's affidavit and testimony establishing Conn's underlying fraudulent scheme. Given the standard's "very low bar," the evidentiary exclusion is supported by substantial evidence.

### B. Residual Functional Capacity Findings

Ison next challenges the ALJ's finding that the plaintiff is not disabled, based on Ison's residual functional capacity ("RFC"). [Record No. 9] A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, she must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education,

and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional capacity and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Here, Ison contends that the RFC findings are improper for four reasons: (1) the ALJ improperly weighed and determined medical opinion evidence; (2) the ALJ failed to consider the factors listed in 20 C.F.R § 404.1529; (3) the decision lacks a function-by-function assessment; and (4) the RFC finding is not supported by substantial evidence. [Record No. 9]

### i. The ALJ's Explanation and Evaluation of the Opinion Evidence

Ison contends that the ALJ assigned "slight weight" to Carlos Hernandez, M.D.—who stated that Ison would be able to perform medium work—but failed to consider "the remaining medical opinions." [Record No. 9, p. 9] Ison does not clearly indicate which alleged medical opinion the ALJ failed to consider. Instead, she appears to contend that the ALJ should not have given weight to certain categories of examination records. Specifically, Ison states that

- 10 -

a non-specialist's observations should not be given the same weight as an orthopedic examination.  Ison also takes issue with the ALJ's statement that the "[p]laintiff's physical examinations with Peggy Ballard, PA-C were 'largely unremarkable[.]'"  [Record No. 9]

An ALJ must evaluate the persuasiveness of each medical opinion by considering the following factors: supportability; consistency; relationship with the plaintiff; specialization; and any other factor that tends to support or contradict the medical opinion.  § 416.920c(c).  A threshold question, however, is whether the evidence is a medical opinion.  The regulation during the relevant period provided that "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).

The defendant asserts that there are no other "statements from medical providers as to what she can 'still do' despite her impairments" in the record.  [Record No. 13, p. 15]  The Commissioner further points out that Ison's statements regarding certain records were recorded by an anesthesiologist, not an orthopedist, which Ison admits in her Reply "after further review of the records."  [Record No. 14, p. 7]  Ison counters, however,  that "this does not change Dr. Wright's status as a specialist who treated the Plaintiff's pain for her central disabling condition."  [*Id.*]

The parties reference Dr. Wright's progress notes from the Pain Treatment Center are found in exhibit 8F.  [*See* Record No. 8, pp. 312-25.]  The follow-up assessment documentation contains a section for the patient's "chief complaint[s]," which includes notes about Ison's reported pain but also contains items such as "alleviated by injections" or medication.  [*Id.*]  "[T]hese records are merely that: medical records."  *Thompson v. Colvin*, No. 12-cv-00558,

2013 U.S. Dist. LEXIS 205678, at *10 (S.D. Iowa Nov. 5, 2013) (citing *Hamilton v. Astrue*, 518 F.3d 607, 610-12 (8th Cir. 2008) (distinguishing a treating physician's monthly "progress reports" as medical records from the physician's "Medical Source Statement" opinion). *See also Salati v. Saul*, 415 F. Supp. 3d 433, 450 (S.D.N.Y. 2019) (collecting cases and stating that "[e]xamination findings and treatment plans" are not medical opinions); *Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (a treatment note that simply documented the patient's complaints and prescribed treatments was not a medical opinion). Therefore, the ALJ was not required to evaluate the persuasiveness of Dr. Wright's progress notes.

To the extent that Ison argues that the ALJ should have given more weight to certain provider records, "[t]his argument is unavailing. While the regulations *permit* an ALJ to give more weight to an opinion of a specialist in the relevant area, they do not *require* that an ALJ do so." *Trevino v. Saul*, No. 19-cv-00870, 2020 U.S. Dist. LEXIS 172671, at *37, n.8 (E.D. Cal. Sept. 18, 2020) (citing 20 C.F.R. § 416.927(c)(5)).

### ii.  Function-by-Function Assessment

For her sixth and seventh arguments, Ison contends that the ALJ's decision lacks a function-by-function assessment and she failed to consider the factors listed in 20 C.F.R § 404.1529.  [Record No. 9]  Social Security Ruling 96-8p requires the ALJ to make a function-by-function assessment of the plaintiff's alleged limitations.  The defendant contends that "the 'function-by-function' aspect of an RFC can often be expressed in terms of exertional categories."  [Record No. 13, p. 14] Exertional includes "lifting, carrying, standing, walking, sitting, pushing, and pulling," and non-exertional is "manipulative, postural, visual, communicative, and mental functions."  *Delgado v. Commissioner of Social Security*, 30 F. App'x 542, 547 (6th Cir. 2002).  Ison agrees that "the RFC is expressed in terms of the

- 12 -

exertional category," but states that the "[d]efendant needed to assess the 'capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.'" [Record No. 14, pp. 3-4]

"'Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,' as there is a difference 'between what an ALJ must consider and what an ALJ must discuss in a written opinion.'" *Beason v. Comm'r of Soc. Sec.*, No. 13–CV–192, 2014 WL 4063380, at * 13 (E.D. Tenn. 2014) (citing *Delgado*, 30 F. App'x at 547).  "More particularly, SSR 96-8p, . . . 'does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision.'"  *Binkley v. Colvin*, No. 15-00844, 2016 U.S. Dist. LEXIS 131380, at *20 (M.D. Tenn. Sept. 26, 2016) (quoting *Beason*, 2014 WL 4063380, at *13).

Ison states that in cases involving pain, the RFC narrative must "'[c]ontain a thorough discussion and analysis of the objective medical and other evidence,' resolve inconsistencies in the evidence as a whole, and 'set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.'" [*See* Record No. 14, p. 4 (quoting SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).]  Here, the ALJ evaluated the claimant's subjective complaints, described in detail the facts and evidence that supported her conclusion, and assigned appropriate weight to opinion evidence.  Ison does not further detail her argument, other than stating that the "Pain Treatment [Center] records consistently document how her pain was aggravated by sitting and standing." [Record No. 14, p. 4] Ison then references her argument regarding the 20 C.F.R § 404.1529 factors, which is discussed below.

### iii.  The Factors Listed in 20 C.F.R § 404.1529

A two-part analysis is utilized in evaluating complaints of disabling pain.  "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).  "Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."  *Id.*

Relevant factors the ALJ should consider include: (1) the claimant's "daily activities"; (2) the "location, duration, frequency and intensity" of her pain; (3) "precipitating and aggravating factors"; (4) the "type, dosage, effectiveness, and side effects of any medication" she takes to alleviate her pain; (5) "[t]reatment other than medication"; (6) any measures she uses to relieve her pain; and (7) other factors concerning her "functional limitations and restrictions due to pain."  20 C.F.R. § 404.1529(c)(3)(i)-(vii).  Ison contends that the ALJ's decision was "arbitrary and capricious"[3] because she failed to consider the third, fourth, and sixth factors.  But "[t]he ALJ's decision need not contain discussion and citations as to every possible factor to be sufficiently specific."  *Childers v. Kijakazi*, 2022 U.S. Dist. LEXIS 122706, at *7 (E.D. Ky. July 12, 2022) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004)).  "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, [the Court is] not to second-guess."  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

---

[3]     Except for errors of law, the Court's function is limited to determining whether there is substantial evidence in the record, as stated above.

## iv. Substantial Evidence Supports the ALJ's Decision.

Finally, Ison argues that the ALJ's "RFC finding is not supported by substantial evidence."  [Record No. 14, 4]  And she repeats the same contention throughout her brief; namely, Ison takes issue with the ALJ's RFC finding by failing to fully credit Ison's subjective statements within the Pain Treatment Center records.  She asserts that it is "not clear how the Plaintiff's limitations of sitting, standing, and walking are accommodated by the light work category."  [Record No. 14, p. 4]

As indicated, progress notes from the Pain Treatment Center contain a section for the patient's "chief complaint[s]," and a record containing mere recitations of the plaintiff's complaints is insufficient.  *See Mangrich v. Colvin*, No. C15-2002, 2016 U.S. Dist. LEXIS 17328, at *15 (N.D. Iowa Feb. 12, 2016) ("a medical record that merely recites a patient's subjective complaints 'is entitled to little weight when unsupported by objective medical evidence.'" (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993))).  "Although an ALJ may consider subjective complaints as evidence in support of a disability, 'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.'" *Schmiedebusch v. Comm'r of SSA*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003)).

In this case, the ALJ properly addressed Ison's subjective complaints and otherwise based her RFC finding on substantial evidence, including examination records, office treatment notes, and progress notes.  [*See* Record No. 8, pp. 469-79.]  The ALJ fully summarized Ison's testimony regarding her pain and alleged limitations but found "the record does not support limitations beyond those contained in the residual functional capacity."  [*Id.*

at 478] The record reflects that Ison visited Integrity Orthopaedics on November 26, 2007, with "great strength . . . good pulses[,] and good sensation." [Record No. 8, p. 268] She was "not having any pain." [*Id.*] She was examined on August 7, 2006, by Dr. Wright, who reported that Ison's "[g]ait [was] normal." [*Id.* at 352] Ison visited Pathways, Inc. and stated that she had "been taking care of [her] grandchild" during the relevant period. [*Id.* at 445] A follow-up office assessment with Dr. Wright on January 7, 2008, indicated that Ison "went back to work . . . cleaning apartments," during this time as well. [*Id.* at 319]

The ALJ relied on the above records and, "[a]fter careful consideration of the entire record," found that Ison "ha[d] the residual functional capacity to perform light work[.]" [*Id.* at 475.] Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, and "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The proffered records constitute "such relevant evidence as a reasonable mind might accept as adequate to support" the RFC finding in this case. *See Consolidated Edison Co.*, 305 U. S. at 229. And a qualified vocational expert identified specific jobs existing in the national economy that an individual with this RFC, age, education, and work experience would be able to perform. [*Id.* at 479] Accordingly, the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Plaintiff Ritha Ison's request for judgment in her favor or to remand this matter to the Social Security Administration [Record No. 9] is **DENIED**. The final administrative decision of the Acting Commissioner of Social Security is **AFFIRMED**.

Dated: July 7, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky